**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JEFFERY L.C., | ) | NO. ED CV 17-1956-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

**PROCEEDINGS**

Plaintiff filed a Complaint on September 26, 2017, seeking review of the Commissioner's denial of disability benefits. On April 25, 2018, this action was reassigned to Magistrate Judge Eick upon the resignation of Magistrate Judge Gandhi (to whom the action originally was assigned). On April 26, 2018, the parties consented to proceed before a Magistrate Judge. On February 12, 2019, the parties filed a "Joint Stipulation." The Court construes the arguments in the "Joint Stipulation" as the parties' cross-motions for summary judgment. The Court has taken these motions under submission without oral argument.

**BACKGROUND**

Plaintiff asserted disability since December 18, 2013, based primarily on alleged knee, back and hip pain (Administrative Record ("A.R.") 36-53). An Administrative Law Judge ("ALJ") examined the record and heard testimony from Plaintiff and a vocational expert (A.R. 16-686).

The ALJ found Plaintiff "has the following severe impairments: subtle tear in the medial meniscus right knee; degenerative changes lumbar spine; osteoarthritis in the right hip; and obesity" (A.R. 19). The ALJ also found, however, that Plaintiff retains the residual functional capacity to perform a reduced range of light work (A.R. 22). In reliance on the testimony of the vocational expert, the ALJ determined that a person having such capacity could perform jobs existing in significant numbers in the national economy (A.R. 27; see A.R. 59-61). The Appeals Council denied review (A.R. 1-4).

Plaintiff now raises a single issue. Plaintiff argues that the ALJ erred by failing to accept the opinions of Dr. Troy Handojo regarding Plaintiff's functional capacity. Dr. Handojo, one of Plaintiff's primary care physicians, opined Plaintiff lacks any capacity for light work (A.R. 684-86).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's

findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from

///

///

material[1] legal error.

The ALJ did not err by discounting Dr. Handojo's opinions regarding Plaintiff's residual functional capacity. Unlike the other physicians of record who rendered opinions regarding Plaintiff's functional capacity,[2] Dr. Handojo opined Plaintiff cannot perform any light work. According to Dr. Handojo, Plaintiff cannot frequently lift and carry as much as ten pounds and cannot stand and walk as much as a total of two hours during an eight hour day (A.R. 684). Where, as here, a treating physician's opinion is contradicted, "if the ALJ wishes to disregard the opinion[s] of the treating physician he [or she] . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (citation and quotations omitted). Contrary to Plaintiff's arguments, the ALJ stated sufficient reasons for discounting Dr. Handojo's opinions.

///
///

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011).

[2] See A.R. 72-74, 97-104, 110-17, 418-22.

The ALJ aptly characterized Dr. Handojo's assessment of Plaintiff's standing and walking restrictions as "excessive" in comparison with "examination findings in the record," and the ALJ accurately stated that "the weight of the evidence simply does not support a sedentary functional capacity" (A.R. 25). Relevant examination findings included the following: Plaintiff was able to walk without a cane; a March, 2014 xray of Plaintiff's knee was "unremarkable without fracture or degenerative disease"; in late 2015, knee xrays showed only early osteoarthritis; at the same time, an MRI showed only a possible subtle meniscus tear; at the same time, lumbar spine xrays showed only moderate degenerative change; scans of Plaintiff's right hip in 2014 and 2015 showed only moderate osteoarthritis; Plaintiff had normal range of motion of his knees and hips; and Plaintiff had normal muscle bulk and tone without atrophy (A.R. 420-21, 513, 559-60, 563, 685). An ALJ properly may reject a treating physician's opinion that is "unsupported by the record as a whole . . . or by objective medical findings." Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004).

    More specifically, the ALJ stressed the disconnect between the profound functional restrictions embodied in Dr. Handojo's opinions and the records reflecting the medical treatment (or lack thereof) received by Plaintiff (A.R. 25). Plaintiff did not receive any surgery beyond an arthroscopic knee surgery occurring years before the period of claimed disability. As of the end of 2015, "[n]o further Orthopedic surgical management [was] planned" (A.R. 563). At the same time, which was during the period of claimed disability, Plaintiff rejected the offer of a steroid injection for his supposedly disabling

hip pain (A.R. 563).  Despite opining Plaintiff has disabling standing/walking limitations from knee, back and hip impairments, Dr. Handojo's treatment notes nowhere suggested Plaintiff might benefit from surgery or even from the use of a cane.  An ALJ properly may discount a treating physician's opinion where the opinion is unsupported by the claimant's treatment history and the physician's own treatment notes.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (conflict between treating physician's assessment and clinical notes justifies rejection of assessment); Batson v. Commissioner, 359 F.3d at 1195 ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); see also Kessler v. Colvin, 2016 WL 2654274, at *18 (E.D. Cal. May 10, 2016) (in rejecting physician's opinion, court noted that the claimant had "abandoned steroid injection treatments after one attempt").

The ALJ also expressly relied on the nature of Plaintiff's admitted activities, stating that "the effort involved in doing those types of activities suggest [sic] that [Plaintiff] is not as limited as indicated by Dr. Handojo" (A.R. 25).  The record does reflect that, during the period of claimed disability, Plaintiff engaged in

relatively extensive exertional activities. Plaintiff's activities included: watching his grandson; visiting with his children; performing electrical work; doing home remodeling; drywalling a bathroom; gardening; mowing the lawn; cleaning; taking out the trash; doing laundry; ironing; running errands; and shopping in stores for food and clothing (A.R. 47, 49-52, 267-69, 460). Inconsistencies between a treating physician's opinion and a claimant's admitted activities can furnish a sufficient reason for discounting the treating physician's opinion. See, e.g., Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). From the nature of the activities cited, it is reasonable to conclude Plaintiff is not as functionally limited as Plaintiff claimed or as Dr. Handojo reportedly believed. See id.; see also Thune v. Astrue, 499 Fed. App'x 701, 703 (9th Cir. 2012) (ALJ properly discredited pain allegations as contradicting claimant's testimony that she gardened, cleaned, cooked, and ran errands); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" was sufficient explanation for discounting claimant's testimony).

The ALJ also observed that Dr. Handojo is a "primary care physician," rather than "an orthopedic specialist" (A.R. 25). The applicable regulation provides that ALJs "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of speciality than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5); see Belknap v. Astrue, 364 Fed. App'x 353, 355 (9th Cir. 2010) (ALJ properly

1 | discounted the opinions of a treating physician based on, inter alia,
2 | the fact that the treating physician was not a specialist). It may be
3 | that an ALJ cannot properly discount a treating physician's opinion in
4 | exclusive reliance on the physician's lack of specialization. See
5 | Kennelly v. Astrue, 313 Fed. App'x 977, 978 (9th Cir. 2009); Lester v.
6 | Chater, 81 F.3d 821, 833 (9th Cir. 1995); Hickle v. Acting
7 | Commissioner, 2017 WL 1731567, at *7 (D. Ariz. May 2, 2017). In the
8 | present case, however, any such reliance was not exclusive.

It is the prerogative of the ALJ to resolve the types of conflicts in the medical evidence that exist in the present case. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001). When evidence "is susceptible to more than one rational interpretation," the Court must uphold the administrative decision. See Andrews v. Shalala, 53 F.3d at 1039-40; accord Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The Court will uphold the ALJ's rational interpretation of the evidence in the present case. Under the circumstances, it was plainly rational for the ALJ to find the opinions of the other physicians of record more persuasive than the opinions of Dr. Handojo.

///
///
///
///
///
///
///
///

**CONCLUSION**

For all of the foregoing reasons,[3] Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 26, 2019.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[3] The Court has considered and rejected each of Plaintiff's arguments. Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the Administration. See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).